UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————x

NEW V & J PRODUCE CORP.,                         :
                                                 :
                              Plaintiff,         :
                                                 :         **OPINION AND ORDER**
         - against -                             :         13 Civ. 4861 (ER)
                                                 :
NYCCATERERS INCORPORATED, d/b/a,                 :
BUZZEO'S CATERING, d/b/a CULINARY                :
CONCEPTS SERVICES, INC., and                     :
JOSEPH S. PALMA, individually,                   :
                                                 :
                              Defendants.        :
——————————————————————x

Ramos, D.J.:

Plaintiff New V & J Produce Corp. ("New V & J" or the "Plaintiff") commenced this

action against Defendants NYCCaterers Inc., d/b/a Buzzeo's Catering ("Buzzeo's"), d/b/a

Culinary Concepts Services, Inc., and Joseph S. Palma (collectively, "Defendants" or

"NYCCaterers") for, *inter alia*, failure to pay for deliveries of wholesale quantities of produce

under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c) (1930) ("PACA" or the

"Act").  On December 9, 2013, Plaintiff voluntarily dismissed the case pursuant to Fed. R. Civ.

P. 41(a)(1)(A)(i).   On the same day, Defendants brought the instant motion for sanctions under

Rule 11 of the Federal Rules of Civil Procedure against Plaintiff and its counsel, Cynthia Attard

("Attard"), Doc. 19.[1]  Defendants argue that Plaintiff's improper assertion of federal jurisdiction

entitles them to monetary sanctions under Rule 11(c)(1).

For the reasons discussed below, while the Court finds that Plaintiff's counsel violated

Rule 11, Defendants' motion for monetary sanctions is DENIED.

---

[1] Defendants' arguments are directed to the conduct of Plaintiff's counsel.  They otherwise present no evidence and
make no argument that Plaintiff should be sanctioned.  Accordingly, this opinion addresses counsel's conduct only.

## I. Background

### A. Background on PACA

PACA is a federal law that regulates the sale of perishable agricultural commodities, which are defined as, "whether or not frozen or packed in ice:  [f]resh fruits and fresh vegetables of every kind and character.'"  *Endico Potatoes, Inc. v. CITGroup/Factoring, Inc.*, 67 F.3d 1063, 1066, 1070 (2d Cir. 1995) (quoting 7 U.S.C. § 499a(b)(4)(A)).  Congress enacted PACA "in order to provide growers and sellers of agricultural commodities with 'a self-help tool . . . enabl[ing] them to protect themselves against the abnormal risk of losses resulting from slow-pay or no-pay practices by buyers or receivers of fruits and vegetables.'"  *D.M. Rothman & Co. v. Korea Comm. Bank of N.Y.*, 411 F.3d 90, 93 (2d Cir. 2005) (quoting *Regulations Under the Perishable Agricultural Commodities Act; Addition of Provisions to Effect a Statutory Trust*, Final Rule, 49 Fed. Reg. 45735, 45737 (USDA Nov. 20, 1984)).

PACA applies to any merchant, dealer or broker of produce in all transactions, "'not simply to the ones that have secured licenses.'"  *A & J Produce Corp. v. Chang*, 385 F. Supp. 2d 354, 359 (S.D.N.Y. 2005) (quoting *A & J Produce Corp. v. Foodways, Inc.*, No. 88 Civ. 0754 (MBM), 1988 WL 120159, at *1 (S.D.N.Y. Nov. 2, 1988)).  Under PACA, a "dealer" is defined as "any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce . . . ."  7 U.S.C. § 499a(b)(6).  However, no person that buys produce solely for sale at retail is considered a dealer unless:  (1) the invoice cost of his purchases in any calendar year exceed $230,000, *see* 7 U.S.C. § 499e(b)(6)(B); or (2) he ships, receives, or contracts to ship or receive produce totaling one ton (2,000 pounds) or more in weight in any day.  7 C.F.R. § 46.2(x).

B.  *The Litigation*

Plaintiff, a wholesale buyer and seller of produce and a licensed PACA dealer, commenced the instant action on July 12, 2013.  Compl. ¶¶ 1, 3.  Plaintiff claimed that it sold $9,314.75 worth of produce to Defendant NYCCaterers during the period January 1 through August 2, 2012, and that NYCCaterers failed to pay for the produce.  *See id.* ¶¶ 10-14.[2]  In the Complaint, Plaintiff alleged that NYCCaterers was a PACA dealer and therefore asserted federal question jurisdiction under PACA.  *Id.* ¶¶ 1, 4.  According to Defendants, however, NYCCaterers is not subject to PACA because it has never purchased $230,000 or more of produce in any year and has never had 2,000 pounds or more of produce delivered or shipped in one day.  *See* 7 U.S.C. § 499a(b)(6)(B); 7 C.F.R. § 46.2(x).  The Complaint also asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332.  *Id.* ¶ 1.  However, the Complaint plainly acknowledges that both Plaintiff and NYCCaterers are domiciled in New York.  *Id.* ¶¶ 3-4.

In a September 25, 2013 letter to the Court, Perry Dean Freedman, counsel for Defendants, requested a pre-motion conference to seek leave to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim.  Letter from Perry Dean Freedman (Sept. 25, 2013), Doc. 8.  Mr. Freedman argued that Plaintiff could not achieve jurisdiction on either ground set forth in the Complaint.  *Id.*  On September 26, 2013, the Court scheduled a pre-

---

[2] Each of the invoices upon which Plaintiff is suing, which are attached to the Complaint, contains the following PACA language (*reproduced here without alteration*):

> In accordance with the PACA Trust payment is due upon receipt of Invoice due 10 days from date of acceptance.  Further the perishable agricultural commodities listed on these invoices are sold subject to the statutory trust authorized by Section 5(C) of the Perishable Agricultural Commodities Act.  1930 (7 U.S.C. 499(a) (c)).  The seller of these commodities retain a trust fund over these commodities.  All inventories of food or other products derived from these commodities and any receivable or proceeds from the sale of these commodities until full payment is received.  In the event of the enforcement of our trust claim.  We will seek to recover reasonable attorneys fee and the cost of recovery.

Compl. Ex. A.

motion conference for October 16, 2013, and directed Plaintiff to submit a written response to Defendants' letter by October 9, 2013.  Doc. 9.

Ms. Attard did not respond by October 9.  Instead, by letter to the Court dated October 10, 2013, which did *not* address the merits of Defendants' letter, Ms. Attard requested the following documentation from Defendants:  (i) an affidavit from NYCCaterers demonstrating, *inter alia*, that Defendants never purchased $230,000 or more of commodities in one year, never had 2,000 pounds of commodities delivered on one day, and has never "been engaged in the business of receiving commodities for sale, on commission, on behalf of another"; (ii) a copy of NYCCaterers' sales tax returns for the year 2012; and (iii) copies of all invoices relating to NYCCaterers' produce-related purchases for the year 2012.  Letter from Cynthia Attard (Oct. 10, 2013), Doc. 10.  Plaintiff's counsel noted that "[u]pon receipt of the above requested items, strong consideration in withdrawing the action to avoid further appearances or motion practice shall take place."  *Id.*

Mr. Freedman submitted a letter to the Court that same day in which he argued that Ms. Attard's letter should be rejected as untimely, and advised the Court that he "reject[s] plaintiff's counsel's offer" to withdraw the action upon receipt of the specified documents.  Letter from Perry Dean Freedman (Oct. 10, 2013), Doc. 11.

At the pre-motion conference held on October 16, 2013, the Court directed Defendants to submit to Plaintiff an affidavit and other documents relevant to the applicability of PACA by October 30, 2013.  *See* Dkt. 13 Civ. 4861 (ER) (Minute Entry 10/16/2013).  The Court also granted Defendants leave to file a motion to dismiss in the event that Plaintiff did not voluntarily withdraw the action upon receipt of such documentation.  *Id.*

In response to the Court's direction, on October 18, 2013, Defendant Palma submitted an affidavit in which he stated that he is an officer of NYCCaterers, which operates for the sole purposes of running the "My Kitchen" restaurant in Forest Hills, New York, and "doing some in-house catering." Palma Aff. ¶¶ 1-3, Doc. 15. Palma attests that in 2012, NYCCaterers purchased produce solely from New V & J, and that such transactions totaled $9,487.90. *Id.* ¶¶ 4, 5. According to Palma, NYCCaterers has never purchased $230,000 or more of produce in any year or had 2,000 pounds or more of produce delivered on any single day. *Id.* ¶ 6.

On October 25, 2013, Mr. Freedman inquired of Ms. Attard via email whether Plaintiff had reached a decision on whether to dismiss the action. Freedman Aff. Supp. Defs.' Mot. Sanctions ("Freedman Aff.") Ex. A at 2 (Doc. 20). The next day, Ms. Attard advised that she had forwarded the Palma Affidavit to her client, and said that she would update Mr. Freedman by October 29, 2013. *Id.* Then on October 31, 2013, not having heard from Ms. Attard, Mr. Freedman emailed her to say that he needed lead time to draft the motion to dismiss if Plaintiff decided continue with the lawsuit. *Id.* at 1. Later that day, Ms. Attard responded that she expected "to hear from [her client] by the end of today." *Id.*

On November 4, 2013, again not having heard from Ms. Attard, Mr. Freedman emailed her yet again to advise that he needed to draft both the instant motion for sanctions and Defendants' motion to dismiss by the following day if Plaintiff decided to further pursue the litigation. *Id.* Ms. Attard responded the same day: "The only solution I see here is to discontinue the action. I am just waiting for the delayed response from my client. I will hound him tomorrow morning. Sorry for the delay." *Id.* Ms. Attard did not contact Mr. Freedman the following day. *See id.*

On November 7, 2013, Ms. Attard obtained a notarized letter from George Alatzas (the "Alatzas Letter"), who has worked in the produce industry since 1973, and as of the date of the letter was the head of receiving and quality control for Katzman Produce.[3]  In the letter, Alatzas states that he is familiar with PACA standards and protocol and that he reviewed three invoices detailing certain of Plaintiff's transactions with Buzzeo's.  On the basis of his experience and his review of the invoices, Alatzas asserts "without reservation that more than 2000 lbs. of merchandise were shipped on [each of] these deliveries."  Attard Aff. Opp. Defs.' Mot. Sanctions ("Attard Aff.") Ex. B, Doc. 23.[4]

Also on November 7, 2013, Defendants served a copy of the proposed motion for sanctions on Plaintiff's counsel in accordance with Rule 11(c)(2).  *See* Doc. 19 ("Defs.' Mot.").

On November 18, 2013, Defendants filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  Doc. 13.  On December 9, 2013, Plaintiff moved for voluntary dismissal.  Doc. 17.  Defendants brought the instant motion for sanctions on the same day.

### C.  Motion for Sanctions

Defendants argue that the legal and factual contentions in the Complaint concerning jurisdiction are frivolous.  Defs.' Mot. ¶ 2.  In particular, Defendants claim that the Complaint "falsely alleges" (i) diversity of citizenship despite acknowledging that all parties are citizens of

---

[3] Katzman Produce, which is not alleged to be a PACA licensed dealer, merchant, or broker in the Alatzas Letter, is located in The Bronx, New York.

[4] The three invoices Alatzas reviewed are dated May 27, 2011; August 4, 2011; and November 25, 2011.  The invoices reflect the price and "quantity" of each item purchased, but do not specify the unit size used for the quantity of each item (except for two references to "bunches," on the May 27, 2011 invoice, totaling $3.00), or the weight of the items.  Attard Aff. Ex. B.  Thus, it is not possible—for the Court at least—to determine if any such delivery of produce was more than 2,000 pounds on the date delivered.

the State of New York, and (ii) jurisdiction under PACA by asserting "that defendants are

dealers and/or commission merchants . . . ." *Id.* ¶¶ 3, 5.

In her affirmation in opposition to the instant motion, Ms. Attard disputes that the

Complaint was frivolous.  Attard Aff. ¶ 5.  According to Ms. Attard, Mr. Freedman was "fully

aware" of her efforts to substantiate the PACA claim, and he has therefore failed to demonstrate

that she acted unreasonably.  *Id.* ¶¶ 12(a)-12(d).  Ms. Attard further claims to have requested that

Mr. Freedman submit evidence to substantiate Defendants' claim that they are not subject to

PACA, but that he declined to do so prior to court intervention.  *Id.* ¶¶ 6-7.  After receiving

Defendant Palma's "limited Affidavit,"[5] Ms. Attard contacted her client for further evidentiary

support.  *Id.* ¶ 7.  And despite her statement that the "only solution was to discontinue the

action," Ms. Attard maintains that she made it clear to Mr. Freedman that she was waiting on her

client's response to the Palma Affidavit before deciding whether to voluntarily dismiss the case.

*Id.*

Ms. Attard received the Alatzas Letter on November 7, 2013, three days after her

correspondence with Defendants' counsel.  *Id.* ¶ 8.  Though the letter provided information that

supported the applicability of PACA, Ms. Attard decided to voluntarily dismiss the case one

month later because her client was unable to generate further evidence in support of the claim.

*Id.* ¶ 9.

Notably, Ms. Attard's affirmation addresses only the assertion of jurisdiction under

PACA, not diversity jurisdiction.

In contrast to Ms. Attard's version of events, Mr. Freedman denies that she requested

documentation regarding the applicability of PACA:  "Ms. Attard, never, ever, asked me for any

---

[5] Ms. Attard does not specify in which way Palma's affidavit was "limited."

substantiation [prior to Court intervention].  I never refused any such request, because no such request was ever made."  Freedman Reply Aff. ¶ 3, Doc. 24.  According to Mr. Freedman, Plaintiff's allegations were false from the outset, and the Complaint should have been withdrawn before Defendants incurred substantial legal fees from the filing of the motion to dismiss.  *Id.* ¶¶ 14-15.[6]

## II. Discussion

### A. *The Standard*

Under Rule 11(b)(3), by presenting a pleading to the court, an attorney certifies to the best of her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).  A motion for sanctions is required to be "made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)."  Fed. R. Civ. P. 11(c)(2).  Pursuant to the Rule, the proposed motion must first be served on the party who allegedly violated the Rule.  *Id.*  The non-movant is then afforded a 21-day safe harbor period to withdraw or correct the challenged paper, claim, defense, contention, or denial before the movant is allowed to file or present the motion to the court.  *Id.*

Rule 11(c) allows the court to award sanctions if it determines that Rule 11(b) has been violated through "false, misleading, improper, or frivolous representations to the court."

---

[6] Additionally, Mr. Freedman criticizes the Alatzas Letter as an unsworn submission that analyzes invoices to a "non-party" (Buzzeo's), and claims that Ms. Attard could have done a "10 second search on the PACA website" to determine whether NYCCaterers was in fact a licensed dealer under PACA.  Freedman Reply Aff. ¶¶ 4, 5.  These arguments are inaccurate or unavailing.  First, the Alatzas letter is notarized; it is not unsworn.  Attard Aff. Ex. B. Second, Buzzeo's is not a non-party; it is named in the Complaint as a "d/b/a" of Defendant NYCCaterers.  Finally, as discussed above, PACA applies to all entities that meet the statutory definition of "dealer," not just to licensed dealers.

*Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008).[7]  In determining whether

there has been a Rule 11 violation, courts apply "an objective standard of reasonableness."

*Weinraub v. Glen Rauch Sec., Inc.*, 419 F. Supp. 2d 507, 512 (S.D.N.Y. 2005).  As the Second

Circuit explained in *O'Brien v. Alexander*, "the standard certification for factual allegations

under Rule 11(b)(3) is that there is (or likely will be) evidentiary support for the allegation, not

that the party will prevail with respect to its contention."  101 F.3d 1479, 1489 (2d Cir. 1996)

(internal quotation marks omitted) (quoting Rule 11 Advisory Committee Note).  Indeed, "[t]he

focus of the inquiry is the attorney's and/or party's reasonable belief at the time of filing, not at

some later time when developments during discovery or trial reveal no basis for the belief."

*Vinuela v. S.S. Britanis*, 647 F. Supp. 1139, 1148 (S.D.N.Y. 1986).  "This construction of Rule

11 'serves to punish only those who would manipulate the federal court system for ends

inimicable to those for which it was created.'"  *Id.* (citation omitted).  Accordingly, the Second

Circuit has instructed that "sanctions may not be imposed unless a particular allegation is utterly

lacking in factual support."  *O'Brien*, 101 F.3d at 1489; *see also E. Gluck Corp. v. Rothenhaus*,

252 F.R.D. 175, 181 (S.D.N.Y. 2008).

> B.  *Ms. Attard Violated Rule 11*

The improper invocation of PACA jurisdiction may be sanctionable conduct under Rule

11.  *See, e.g., Val-Land Farms, Inc. v. Third Nat'l Bank*, 937 F.2d 1110 (6th Cir. 1991)

(upholding the imposition of Rule 11 sanctions on plaintiff that improperly asserted federal

---

[7] Rule 11 discusses the obligations of attorneys and unrepresented parties.  However, "both a represented party and his attorney can be sanctioned under Rule 11(b)(3) for the factual insufficiency of a complaint."  *Amorosa v. Ernst & Young LLP*, No. 03 Civ. 3902 (CM), 2010 WL 245553, at *4 (S.D.N.Y. Jan. 20, 2010).  And as the Second Circuit stated in *Calloway v. Marvel Ent. Grp.*, 854 F.2d 1452, 1474 (2d Cir. 1988), *rev'd in part on other grounds*, *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120 (1989), Rule 11 sanctions may be imposed upon a represented party when the party "had actual knowledge that filing the paper constituted wrongful conduct, *e.g.* the paper made false statements or was filed for an improper purpose."  *See also Salovaara v. Eckert*, 222 F.3d 19, 33 (2d Cir. 2000) (citing *Calloway* for the same).

question jurisdiction under PACA).  Ms. Attard violated Rule 11 here because, as she ultimately had to acknowledge, Defendants could not properly be classified as PACA dealers.  In the first instance, in her affirmation in opposition to Defendants' Motion for Sanctions, Ms. Attard provides *no* information concerning what investigation, if any, she conducted *prior* to filing the Complaint to determine if PACA was applicable.  In any event, it should have been clear to Ms. Attard that PACA jurisdiction was not viable by *no later* than October 18, 2013, when she was served with a copy of the Palma Affidavit.  Three weeks later she was served with the proposed Rule 11 motion.  Even then, she failed to withdraw the Complaint within the 21-day safe harbor period.  Her failure to conduct an appropriate investigation prior to filing the Complaint, and to proceed diligently when confronted with information suggesting PACA was inapplicable to either withdraw the Complaint or rebut the information, is sanctionable conduct.[8]  *See* Fed. R. Civ. P. 11(b)(3) (by presenting it to the court, an attorney certifies that "the factual contentions [of a pleading either] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . .").

Ms. Attard further violated Rule 11 by claiming diversity of citizenship.  "[I]mproperly invoking subject matter jurisdiction of a federal court is sanctionable under Rule 11."  *Wood v. Brosse U.S.A., Inc.*, 149 F.R.D. 44, 51 (S.D.N.Y. 1993) (quoting *Brignoli v. Balch, Hardy & Scheinman, Inc.*, 126 F.R.D. 462, 465 (S.D.N.Y. 1989) (internal quotation marks omitted)). "The general rule requiring complete diversity between opposing parties is explicit and unequivocal."  *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 391 (2d Cir. 1989); *see also Wood*, 149 F.R.D. at 51.  Indeed, the "requirement of complete diversity between

---

[8] While not strictly speaking relevant to the Rule 11 analysis, the Court notes that Plaintiff's counsel might have avoided this motion if she had simply been more diligent in responding to the concerns and requests of Defendants' counsel.

plaintiffs and defendants has been clear since *Strawbridge v. Curtiss*, [7 U.S. 267 (1806)]."
*Solloway v. Ellenbogen*, 121 F.R.D. 29, 31 (S.D.N.Y. 1988).

At the time of the filing of the Complaint, it was patently clear that diversity jurisdiction could not be satisfied. The Complaint explicitly alleged both that Plaintiff maintains its principal place of business in New York, and that Defendant NYCCaterers is a New York corporation. Compl. ¶¶ 3, 4. And because Plaintiff sought only $12,314.75, the amount in controversy requirement was clearly not satisfied. *Id.* ¶ 21. On these facts, "[n]o reasonable person could have believed that diversity jurisdiction existed over this action." *Solloway*, 121 F.R.D. at 31. Not surprisingly, Plaintiff's counsel makes no attempt to justify the invocation of diversity jurisdiction.

### C. *Sanctions Are Not Warranted*

A finding that Rule 11 has been violated does not compel the imposition of sanctions. Indeed, under Rule 11(c), "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court *may* impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1) (emphasis added); *see also Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (holding that "sanctions under Rule 11 are discretionary, not mandatory"); *Bernhardt v. Tradition N. Am.*, 676 F. Supp. 2d 301, 306 (S.D.N.Y. 2009) (stating that a motion for sanctions under Rule 11 raises two issues: (1) whether Rule 11 has been violated, and (2) whether the court should exercise its discretion to award sanctions based on the violation); *Chauvet v. Local 1199, Drug, Hosp. & Health Care Emps. Union*, Nos. 96 Civ. 2934 (SS), 96 Civ. 4622 (SS), 1996 WL 665610, at *17 (S.D.N.Y. Nov. 18, 1996) (it is left to the Court's discretion whether to impose sanctions for a Rule 11 violation, "even where the violation

is clear"). The Second Circuit has made clear that Rule 11 sanctions "should be imposed with caution." *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994); *see also Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 478 (S.D.N.Y. 2013) ("Courts impose Rule 11 sanctions with discretion and caution."). Rule 11 sanctions "are an extreme remedy, such that when divining the point at which an argument turns from merely losing to losing *and* sanctionable . . . district courts [must] resolve all doubts in favor of the signer [of the pleading]." *Ramashwar v. Espinoza*, No. 05 Civ. 2021 (AJP), 2006 WL 36752, at *3 (S.D.N.Y. Jan. 6, 2006) (citation omitted); *accord Fleming v. Hymes-Esposito*, No. 12 Civ. 1154 (JPO), 2013 WL 1285431, at *11 (S.D.N.Y. Mar. 29, 2013) ("Rule 11 sanctions are an extreme measure.").

As the Second Circuit has noted, "Rule 11 targets situations where it is patently clear that a claim has absolutely no chance of success." *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991) (internal quotation marks and citations omitted); *see also In re Highgate Equities, Ltd.*, 279 F.3d 148, 154 (2d Cir. 2002) (holding that "under Rule 11(b)(3), 'sanctions may not be obtained unless a particular allegation is utterly lacking in support'" (quoting *O'Brien*, 101 F.3d at 1489)). Even more, courts generally look for a "direct falsehood" in a party's papers and contentions. *Sichel v. Unum Provident Corp.*, 230 F. Supp. 2d 325, 332 (S.D.N.Y. 2002). A "reasonable belief that a colorable claim" existed at the time of the complaint (or before discovery) allows parties and counsel to avoid sanctions regardless of the claim's success. *Rotter v. Leahy*, 93 F. Supp. 2d 487, 503 (2d Cir. 2000). Indeed, finding later that a claim lacked evidentiary support is "not a sufficient basis on which to impose sanctions." *Id.* Given the stringent standard for the imposition of sanctions in this Circuit, the Court finds that sanctions are not warranted on the facts of this case: counsel did not act in bad faith; she did not rely on a direct falsehood; and the claim was not "utterly lacking in support."

Courts typically award sanctions for the improper invocation of subject matter jurisdiction where the plaintiff "attempt[s] to gain a foothold in federal court . . . ." *LaVigna v. WABC Television, Inc.*, 159 F.R.D. 432, 436 (S.D.N.Y. 1995) ("wholly frivolous" Title VII and FLSA claims were sole bases for federal jurisdiction); *see also Solloway*, 121 F.R.D. at 31 (granting sanctions where the complaint alleged that both plaintiffs and two of the defendants were citizens of New York and there was no other basis for the court's jurisdiction); *Wood*, 149 F.R.D. at 51 (granting sanctions where the deficiencies of five causes of action should have been "readily apparent" to plaintiff's counsel and the amount in controversy relating to the remaining two claims was insufficient to invoke diversity jurisdiction, the sole basis of federal jurisdiction). For example, in *Val-Land Farms, Inc. v. Third National Bank*, the court upheld the imposition of Rule 11 sanctions based on a PACA claim that "was a loser from the start." 937 F.2d 1110, 1117 (6th Cir. 1991). There, plaintiff potato growers brought suit under PACA in connection with their sale of potatoes to Compton Produce, a third party that ultimately went bankrupt. *Id.* at 1112-13. However, the plaintiffs did not bring the claim against Compton Produce—which presumably was judgment proof—but instead against Compton Produce's banker, Third National. *Id.* The court found that plaintiffs' "contention that the bank was a potato dealer . . . ludicrous." *Id.* at 1117. Accordingly, the court affirmed the award of sanctions in the form of legal fees. *Id.*

Ms. Attard's decision to pursue a PACA claim here is distinguishable from plaintiffs' claim in *Val-Land Farms* if for no other reason than the notion that a restaurant/catering business might purchase sufficient produce to come within the ambit of PACA is not as "ludicrous" as the notion that a bank might. Indeed, her client—upon whom she was entitled to rely—is itself a wholesale buyer and seller of produce *and* a licensed PACA dealer. Compl. ¶ 3. The invoices

13

evidencing the sales also contained language suggesting that the transactions were subject to PACA regulations.  Moreover, Ms. Attard continued to search for information to substantiate the PACA claim after the filing of the Complaint.  Indeed, she obtained some modicum of support for the applicability of PACA in the form of the Alatzas Letter.  Based on the foregoing, it is evident that Ms. Attard did not name the Defendants in a bad faith attempt to gain a foothold in federal court.  *LaVigna*, 159 F.R.D. at 436; *see also Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc*., No. 92 Civ. 7916 (SWK), 1993 WL 362391, at *10 (S.D.N.Y. Sept. 14, 1993), *aff'd in relevant part*, 23 F.3d 41 (2d Cir. 1994) (noting counsel's "poor judgment" and "sloppy legal work" in asserting diversity jurisdiction, but declining to award sanctions to due to counsel's professed lack of knowledge of defendant's business structure, making it is plausible that a competent attorney could have form a reasonable belief that the claim of diversity was well grounded in fact and existing law).  Here, counsel's conduct was certainly deficient, but the Court finds that that it was based on the good faith, if mistaken belief that PACA applied.

There is also no evidence of bad faith in counsel's reliance on diversity jurisdiction.  To the contrary, Ms. Attard accurately noted in the Complaint that Plaintiff and NYCCaterers are both citizens of the State of New York.  By contrast, in *Weinraub v. Glen Rauch Securities, Inc.*, the court awarded sanctions against the plaintiff's attorney where publicly-available documents showed that Valley National Bank, a defendant, was—like the plaintiff—a citizen of New Jersey, and the "Amended Complaint pled the corporate citizenship of the other defendants, but *studiously avoid[ed]* mentioning that Valley is a New Jersey banking association."  419 F. Supp. 2d at 518 (emphasis added).  Similarly, in *Route Messenger Services, Inc. v. Holt-Dow, Inc.*, the court awarded Rule 11 sanctions in a diversity action where the plaintiff failed to indicate where its principal place of business is located.  *See* 139 F.R.D. 311, 311 (S.D.N.Y. 1991).  The court

noted that it was undisputed that the plaintiff had at least two corporate offices, in two different states. *Id.* at 312. Thus, its counsel's failure to include in the complaint a statement regarding the plaintiff's principal place of business appeared "intentional, to fabricate complete diversity . . . and thus, federal court jurisdiction." *Id.*

Such facts are not present here; rather, Ms. Attard invoked diversity citizenship without basis, but also with no apparent ill intent. While such conduct violates Rule 11, the Court finds that it does not rise to the level of extraordinary circumstances so as to warrant Rule 11 sanctions. *See Robledo*, 965 F. Supp. 2d at 478 (sanctions not imposed where court found no evidence of improper purpose or bad faith); *see also Abdelhamid v. Altria Grp.*, 515 F. Supp. 2d 384, 400 (S.D.N.Y. 2007) (no sanctions imposed where no evidence that plaintiff's counsel made his allegations in bad faith or with the intent to harass or injure); *Rivas v. Bowling Green Assocs., L.P.*, No. 13 Civ. 7812 (PKC), 2014 WL 3694983, at *4 (S.D.N.Y. July 24, 2014) (declining to award monetary sanctions where counsel improperly removed case to federal court but acted with "no venality"; counsel violated the defendant-forum rule but truthfully disclosed on the face of the notice of removal the facts that reveal the violation). Finally, and as this court has previously recognized, "[a] finding that someone has engaged in sanctionable conduct is a finding that itself carries a sting." *Milani v. Int'l Bus. Machs. Corp.*, No. 02 Civ. 3346 (MBM), 2004 WL 3068451, at *2 (S.D.N.Y. Dec. 30, 2004). That alone is sufficient here.[9]

---

[9] The Court also notes that because Mr. Freedman knew as early as October 9, 2013 that Ms. Attard was actively contemplating dismissal, he could have avoided incurring the legal fees associated with filing the motion to dismiss by requesting an adjournment of the date to file the motion.

**V. Conclusion**

For the reasons set forth above, Defendants' motion for sanctions is DENIED.  The Clerk of the Court is respectfully directed to terminate the motion.  Doc. 19.

It is SO ORDERED.


Dated:     September 29, 2014
           New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.

16